Good morning, Your Honors. To please the Court, my name is Joseph Trojan. I'm counsel for Appellant O'Neal Industries. This is an unusual case in the sense that on a 12e motion for more definite statement, the Court made factual findings and limited what we could plead. Typically, with respect to any Rule 12 motion, the facts themselves should be accepted as true. Yet, in this particular case, the Court made factual findings considering whether our trademarks, the history of the use of the trademark, in this case the letter O, had a single commercial impression. Now, based upon the Court's ruling that we were now barred from even amending our complaint to more definitely state that we were claiming tacking, the Court, on its order, said we could not do that, that it was finding that there was no single commercial impression and that, in fact, we had separate trademarks. Those are clearly issues that we believe would be appropriate for a jury and certainly inappropriate at such an early time in the pleadings when all of the allegations should be accepted as true, including our allegation of tacking. With respect to tacking, where are we on that issue? With the Ninth Circuit. The Ninth Circuit is basically saying if you have a – if your trademark makes a single commercial impression, that there's this evolution in the trademark and it creates a single commercial impression, then that you're entitled to tacking. And so that's clearly an issue that requires – But isn't there an issue here as to whether it was raised in the district court? Well, the – I think that the – well, certainly the fact that it was dismissed early out of the case, the Court made a specific finding early on. So, therefore, we were not allowed to present it. It was no longer in the case at the summary judgment stage. And, in fact, in the briefing, we pointed out that even on the summary judgment, even the defendant pointed out that that issue had already been decided, that we could not revisit it on summary judgment. Is this a jury question or is it a question of law? I believe the underlying question is one of fact. So, therefore, it would be appropriate for a jury because you need to look at the totality of the circumstances of how the trademark is used. You simply can't go and look at a pleading and compare two things and know what the commercial impression is. The commercial impression is the actual impression it makes in the marketplace and how consumers and the others in the industry perceive it. On that particular issue, the issue that we presented relating to likelihood of confusion between the marks would also be indicative that people considered that we were entitled to those rights because people wouldn't have been confused if they didn't consider our mark to be distinctive. And so they weren't saying, well, we're just arbitrarily confused. No, they were confused thinking that the infringing mark was we were selling that. That's a classic case of trademark infringement. And so all of those issues, if I can probably go to that issue now. Well, assuming that tacking has been preserved and it's still in the case, what is your contention that the rounded mark and the angular O mark are not distinct? That the two marks are not distinct? In other words, that you have tacking all the way through. Well, again, I don't think that that's an issue that can be decided at the stage of pleading when it was decided. Looking at those two marks, one could conclude, is it possible for one if one reads all the facts in our favor, which was they were obligated to accept the facts alleged in the complaint and then was obligated to read all the facts in our favor on summary judgment. If you look at that way, you can see that a reasonable jury could come to the conclusion that, in fact, there was this evolution in the marks. People were familiar with O'Neill product. O'Neill had been around since 1970. They were familiar in the marketplace with the O that they started using in the early 1990s, 1991. And over time, naturally, because they have many graphics and things that go on the helmets, graphics that go onto their other products, the shape of the logo and the shape of the O would evolve. But there was never any discontinuity in consumer recognition that they were buying from O'Neill. Okay, but I guess what I'm trying to get at is what is our task at this point, in this stage of the proceedings? What standard are we to apply? For example, are we to look at these two marks and to try to decide whether it's the same commercial impression or not, or is it simply a question that the company decided to change their mark and that's up to them and they're still going? I don't think that it's necessarily appropriate for this Court, just like it wasn't appropriate for the district court, to make a factual finding about that. We're not asking for the court to simply draw a different factual conclusion. We're saying it was never appropriate for the court at the pleading stage to decide the issue, and so therefore we should be allowed to properly plead it and let the evidence fall where it may as to whether there is in fact factual evidence. Okay, but we have summary judgment here, and arguably the district court held that he could take it away from the jury because there is no way in which the jury could have found that this was the same commercial impression. Right, and that particular finding is reviewed de novo, so it's a summary judgment motion, so therefore it's de novo review. Okay, well then answer my question. I'm looking at these two marks, the rounded O mark and then the angular O mark. Correct. Those are the two that we have to look at, correct? Correct. All right. I see on the rounded O something that looks like an apostrophe and it's separate from the O. Correct. I see on the angular O something that kind of looks like a lemon on its side and there is no separation of the so-called apostrophe. Right. And so what am I to do with that? You're to say that O'Neill was not given the opportunity to present the commercial evidence that in fact in the marketplace people view those two marks as one mark, as the evolution of the O'Neill mark, and there was never any discontinuity in that commercial impression. Because this Court, just like the district court at the summary judgment stage, did not have a fully developed record on that issue because we were never allowed to proceed past the pleading stage with the issue. So therefore, I don't think that this, just as this Court looks at it and goes and says, well, I see some differences. You may see there's some similarities. How do I assess that? Well, you lack the information to assess it because we weren't given the opportunity to develop that record below because it was knocked out of the case on a motion from our definite statement, which is extremely unusual in itself that that would happen on a motion from our definite statement. The rule provides that we can go and allege something more specific in our complaint. It's extremely unusual for a court to say, well, I'm specifically not going to allow you to allege certain facts, that these are the same commercial impression. Going and saying at the pleading stage, you are barred from alleging, in this case, the fact that the market views these as a single commercial impression. Now, that's extraordinary, and I believe that that was wrong as a matter of law and was reversible, and that's where the case should proceed because it infected the remainder of the case. It infected the summary judgment motion, infected the findings under the sleep craft factors the Court went back to rely upon, the fact that the marks weren't the same. Now, let's move off the tacking issue and look at the rounded O mark as compared to the one icon. Now, with respect to that, we apply sleep craft factors, and the question is likelihood of confusion. Is that correct? Got it, and that was a jury question. On the summary judgment motion, all of the evidence that we presented of likelihood of confusion needed to be viewed most favorably to us on that motion. Here we are looking at these two marks now, and one could argue, as your opponent has, that there's no way in the world that you could confuse these two marks. They look different. They have a figure one in the middle of one, and there's a hole in the other. There's no apostrophe in one, and there is an apostrophe in one and none in the other. That's exactly what this Court just recently in the Jada Toys v. Mattel case warned against. Simply a district court judge or any judge sitting there and just trying to compare the two marks and decide on its own whether there would be a likelihood of confusion. In this case, we presented confusion of consumers. People believing that we sold the one industry's helmet. We presented confusion by dealers that had been in the business for many years. We presented confusion of retail stores where their salespeople reported confusion from consumers who came into stores. We had confusion of people calling into O'Neill. We had evidence of confusion by the manufacturer. He shipped a helmet to us that wasn't our helmet. It was one industry's helmet. We had confusion from a publisher who'd been in the business for 30 years and had the one industry's logo on his shirt, walked up to the vice president of O'Neill and said, oh, thank you for this T-shirt. He says, that's not my T-shirt. That's theirs. So we have confusion at every level. We had evidence of intent under sleep factors. What is the intent? That one industries, before they got into the helmet market, always used one industries on their products. When they went to helmets, they didn't put the one industries on the helmet. They just used a logo that was very similar to ours, knowing that O'Neill had been in the industry for many years and sold tens of millions of dollars worth of helmets, trying to trade off our goodwill. They set up a separate website just to separate their one industries' other products with their decals and things like that. They set up a separate website just for the helmets and only didn't use one industries on there, used the logo initially. So clearly, from that you could infer an intent to trade off the goodwill, get away from their name, one industries, and move over to trying to give the impression that it was similar to an O'Neill helmet. And so I think all of those are intensely back questions. They can dispute, go through and point to factual disputes about the quality of that evidence or other interpretations of that evidence, but that's certainly not the kind of thing that can be done on a summary judgment. That's the kind of argument you make in closing to a jury. And so on that basis, I'd like to reserve the balance of my time. You may do so, counsel. That's fine. May it please the Court, John Hengartner, on behalf of the plaintiffs in this action and appellees here, One Industries and Ludovic Bonnard. It's interesting to hear this argument about the issue of tacking, because it's very clear that the appellant is arguing that they were somehow precluded from making the argument that there was tacking by the order of the judge that granted One Industries 12E motion. A review of that order indicates there's nothing like that in the order. For purposes of the 12E motion, the district court, and this order can be found at, let's see, ER 31, pages ER 791 through 805, and specifically looking at page ER 799. This is apparently the statement that appellant is relying on to claim that they were precluded from arguing infringement of the angular O mark. In fact, for purposes of a motion to dismiss, the district court simply said it had not been persuaded that there was continuity among the five different marks which had been put in front of it by the appellant. In fact, there was a – there were five separate iterations of the O apostrophe mark that were unclearly pled in the initial complaint. Excuse me, counsel. The reference between 791 and 805, what page? 799. It's page 9 of that order. Thank you. That's right. And in this, the district court indicates it was unpersuaded by O'Neill's claim that it uses only one mark that has been slightly altered, in part because two of the alleged marks – or two of the marks alleged to be one have been registered separately, and the marks presented appear to this court to be more than just slightly different. This was not, however, a binding finding of fact that prevented any further discussion of this issue. This was a statement made in support of a decision to require a more definite statement, and that's all this order did. Counsel, let me ask you a question about tacking on the merits. Is this – is the court correct that it matters whether more than one mark has been registered separately as to whether tacking is permitted? Isn't tacking about how people perceive it and not whether it's registered separately? Your Honor, yes. The issue of tacking is about how it's perceived by consumers, and it's about whether it's created a continuing commercial impression. So the fact that the court here relies on the two have been separately registered is pretty irrelevant, isn't it? That's right, Your Honor. The indication was that the two marks that had been registered, the idea of the two registrations I think was being cited by this Court as one of its reasons for making this decision. And I don't think there's any case law that precludes considering registration of two separate marks in this situation. But certainly the fact that the two separate marks were registered doesn't control the decision. And I think the Court's continuing on to say that the marks appear different to the Court was certainly appropriate in the context, again, of a 12e motion that is simply seeking a more definite statement about what mark is being alleged to infringe. Well, respond to counsel's argument. This is a jury question, and the Court can't take it away from the jury. And, Your Honor, the Court did not take it away from the jury. The plaintiff took it or the appellant took it away from the jury. What happened was in response to this order, which simply required them to restate their pleadings and more clearly define what mark they alleged to be infringed, they elected to amend to elect solely infringement of the rounded O mark. And a review of the operative pleadings in this case makes it clear. We're looking at ER 40 and ER 38 are the two operative pleadings in this case, the amended counterclaims. And in both cases, the election was made by the appellant to solely allege infringement of the rounded O mark. There was nothing that precluded them from alleging infringement of the angular O mark at that point. They just chose not to do it. Now, the other thing that I think is important to understand is all of this happened at the end of discovery. There's certainly no argument that appellant was precluded from taking discovery on this issue. The Court granted the order to amend the pleadings at the end of May of 2007. And, in fact, discovery closed at almost exactly that time. The very next entry on the docket three days later was a motion to take additional discovery beyond the fact discovery cutoff. So discovery was complete at the time that the appellant made their amendment and made their election to proceed claiming infringement of the rounded O mark. Now, if we ---- Let's assume that we have before us the propriety of the earlier ruling requiring a more definite statement. Let's assume that that is part of what we have jurisdiction to review. By what standard do we review that motion? In other words, if it was nonsensical or wrong in some way for the Court to require a more definite statement and the claimant ought to be allowed to proceed on the existing pleading, how do we know that? Is it abuse of discretion? Is it de novo? What is it? Your Honor, I would have to find the case law. My understanding is that it is an abuse of discretion because, again, it is not like a motion for summary judgment. It is not an order that controls the case or decides the issues in the case. It is an issue that simply sends it back out to the parties to clarify their proceedings. Okay. So just follow my train of thought here. And I know you don't necessarily agree with the premises, but it will help me think it through. If we have jurisdiction over that order to make more definite and certain, and if we were to find that it was an abuse of discretion, then what would follow from that? Would it simply be that the initial pleading of that claim would remain in the case for further development? Is that all that would happen? Your Honor, it's my understanding that's what would happen with respect to the actual pleadings. However, this Court certainly could decide as a matter of law that tacking was not appropriate in this case. Because, again, while there are factual issues involved, there's nothing that prevents the district court, as it can on any summary judgment motion, from making a determination that given the differences in these marks and the differences in how these marks have been used, and in the timing and development of these marks, there's nothing that would prevent either the district court or this Court from making a determination as a matter of law. But procedurally, that wouldn't necessarily follow. All that would follow from my question is that the initial claim as to that matter would just be in the case rather than out of the case. That's my understanding, Your Honor. That's my understanding. Now, I think when we go to the merits of tacking, as this Court pointed out, these two marks are obviously dissimilar. And certainly this is a situation where it would be appropriate to find as a matter of law that there could not be tacking. This idea that, first of all, there's no evidence in this case. Well, Counsel, don't read too much into what you heard. What I'm suggesting is the question, what is it that we apply? What's the standard that I have to apply when I look at these two marks, starting first with the rounded O against the angular? Your opponent thinks that's a jury matter. What is it that would convince this Court that it can be taken from the jury because there's no genuine issue of fact? Your Honor, well, what could take it from the jury in this case is that there's absolutely no evidence in this case that the angular O mark carried, continued the same commercial impression as the rounded O mark. There's been no evidence offered by this – in this case. There have been no surveys. There have been – there's been no consumer testimony of any kind as to the commercial impression created by any of these marks. So as an initial matter, there is no evidence to support a claim of tacking in this case. As a second – Well, if that was sort of taken out at the pleading stage, why would there be evidence? It just seems that procedurally it got a little bit tangled up. Your Honor, absolutely. It did get a bit tangled up because this motion to dismiss – or motion for a more definite statement wasn't decided until the end of discovery. So, again, if this court found that that decision was – was taken out of the case and the appellant correctly perceived that it could not argue tacking anymore, then I think this case would probably have to be remanded to have that issue decided properly before the district court. Now, that court could, as a matter of law, make a determination that there is no evidence of a continuing commercial impression. It could make a decision, even if there was some evidence, that as a matter of law, there is no evidence that there is a continuing commercial impression. The two marks are so distinct in terms of their appearance and the way they're structured that there's really – this court could, as a matter of law, make that determination. That goes back to my question. What is it that I'm looking at here? Well, I know what I'm looking at. What's the standard that I apply in trying to determine whether you're correct that the marks are distinct? Your opponent argues vociferously that they're not distinct at all. Your Honor, if we go back to the Brookfield case, which is cited, and there are a number of other cases that cite – that discuss the tacking doctrine, as it's been explained in the Brookfield case, this is an exceedingly strict standard. If a trademark holder wants to try to tack different marks onto their prior marks, they have to establish, and it's their burden to establish, that the later mark creates the same commercial impression and that it does not materially differ from or alter the character of the mark. That's the standard. And so that is a standard which may involve questions of fact that go to a jury, but may also be decided on summary judgment where there are no genuine issues of material fact in dispute. So what are you relying on to bolster your point that this – as a matter of law, this – there is not the same commercial impression? The fundamental difference in the appearance and character of this mark and the fact that there is no evidence in the record of any continuing commercial impression between these two marks. Okay. We'll put aside the evidence in the record in response to the concerns that Judge Graber has properly raised. What – I mean, other than your conclusion that they're different, why are they different? How are they different? What are the distinctions that are legally relevant? The distinctions are similar to those that we look at for assessing similarity under the sleek craft factors. So if we look at the sight, sound, and meaning of them, the appearance of these two marks is radically different in the sense that one is a very rounded object with a distinct apostrophe. The other is very angled and has an attached apostrophe. They don't appear to be even somewhat similar. This is – and when the cases are reviewed, Your Honor, in terms of what is tacking or what kind of marks support tacking, it's things like the kernel in the Kentucky fried chicken case. We have a very iconic image, which has obviously been updated over the years, but has established secondary meaning. People associate this picture of the kernel with fried chicken. They associate an iconic image with something else, the Morton Salt kind of thing, a girl with an umbrella. It's very distinctive and unique. And again, I neglected to explain this, but another issue is establishment that this mark has created secondary meaning. So if the O apostrophe, the earlier mark, has secondary meaning with consumers, that it is fundamentally associated with this company, a transition to a modified or a carefully modified version of that that's more modern may be entitled to tacking. Here we have no evidence of secondary meaning established in the O apostrophe. The end result, if tacking is allowed in this situation, would be that this company would be able to claim all its variants of an O apostrophe to attack back to each other, and it would have taken control of the O apostrophe for anything to do with Motocross. As we've seen in the discussion in the district court's decision, it's an extremely crowded field with respect to the letter O, and there's no evidence that O'Neill has appropriated the O apostrophe for itself in the field of Motocross. All right. How about the second comparison, the rounded O with the one icon? The rounded O with the one icon, Your Honor, the district court's decision, I think, is a very good analysis. It's a very clear analysis of the sleek craft factor that easily supports a finding that no reasonable trier of fact would find the likelihood of confusion in this case. The court walked through them. It's certainly on the similarity of appearance. They've already addressed that. They're very distinct-looking marks. The two marks coexisted for many years. If you look at it, there's a timeline. I'm going to suggest to you, you're very conclusory. They're very distinct, you say. Well, they're distinct as you look at them, but we have no prior history with this, other than this case, and you have to tell us why they are distinct and what is it that's specifically different one about the other as a matter of legal relevance. As a matter of legal relevance, there's the shape of the logos, as we discussed earlier. One is a round O with a distinct apostrophe. Well, it's a slanted round O. It's a slanted round O. The other has extremely sharp corners, and it has the one icon was we'll go through this thing, sight, sound, and meaning, Your Honor. Well, in terms of meaning, in terms of sight, I've described the differences in terms of the angularity and the shape of these logos. In terms of meaning, the O apostrophe is clearly a reference to the name O'Neill and to an Irish surname, while as the one logo is divine from motocross racing, where number one is the place where everyone wants to be. The number one rider wears the number one on the front of their motorcycle. The number one rider is the champion. And so the one industry's name is devoted entirely to evoking this position of being the top company in this field. Number one. It has nothing to do with O. It has nothing to do with the name O'Neill. In terms of the sound, these are both neither one really has a sound associated with it. So sound is not so relevant. So we're really looking at appearance and meaning, both of which are fundamentally different. Your Honor. If we go on to the other factors, the Court walked through the differences in terms of how they're used in the market as well. These two appear. And again, we can look. We've provided examples of the various catalogs and supplemental excerpts of record that allow a direct comparison of how these two marks are used in commerce and how they appear to a customer on a helmet and viewed in their context on a helmet. They look nothing like each other. The one logo apparently frequently appears with two different colors so that the reciprocating number ones are in two different colors or different tones. Whereas the O that is used by O'Neill is used always as clearly an O apostrophe. So as used in the trade, they're very different. Thank you, counsel. Your time has expired. Mr. Ojan, you have some reserved time. Thank you, Your Honor. To answer the question about the review of the motion for more definite statement, we would say that is a review de novo because what someone can plead in a trademark case is an issue of law. It should be consistent in every case. Do you have any case that says that the review of an order requiring a more definite statement is reviewed de novo? I do not have that. I would believe that to the extent that the moat that was something where it was just asking for us to be more specific about a detail, that may indeed be something that is reviewed for abuse of discretion, just requiring more detail in a complaint. There's nothing offensive about that. Here we're talking about saying what we could affirmatively plead. You are now barred from pleading a particular thing as a matter of law. Where do you see that you are barred instead of providing more detail? Two places. One, it says that this is ER 319 is a reference to the more definite statement opinion. And it says at line 5, 1 Industries argues that, quote, even a cursory inspection makes clear that as a matter of law, this is not a single mark. Then it goes on and explains why. Then the court says, this court agrees with 1 Industries. So in other words, the court was agreeing that as a matter of law, we could not say that it was a single mark. So I don't, that was the law of the case. The court could not be any more clear than to say this court agrees with 1 Industries. And in fact, 1 Industries knows that to be true because in the record at ER 41-1 at page 8 of their brief on the summary judgment, at line 8, they say, quote, O'Neill has provided five distinct and very different images of that single mark. And this court has already rejected O'Neill's argument that these are, in fact, a single mark. May 29, 2007 order, docket entry 31. That is the order I just read from. So even 1 Industries knew the interpretation. I see my time is up. Thank you, counsel. The case just charged will be submitted for decision.
judges: Noonan, O'scannlain, Graber